IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

LIGHT FOR LIFE, INC., and       :
DAVID BYUNG KOOK KANG,      :
                          :
     Plaintiffs,          :
                          :
v.                          :
                          :     No. 3:12-CV-38 (CAR)
OUR FIRM FOUNDATION FOR    :
KOREANS, INC., PAUL IM, CHANG  :
SUP SHIM, and JUSTIN KIM,     :
                          :
     Defendants,         :
                          :
v.                          :
                          :
GINA CHO,               :
                          :
     Counter-Defendant.    :
_____:

## <u>ORDER ON SUMMARY JUDGMENT</u>

This trademark and copyright infringement action is currently before the Court on

Defendants and Counterclaimants Our Firm Foundation For Koreans, Inc. ("OFFK"),

Paul Im, Chang Sup Shim, and Justin Kim's Motion for Summary Judgment [Doc. 62]

and Motion for Partial Summary Judgment [Doc. 64]. Having considered the Motions,

the parties' arguments, and the applicable law, the Motion for Summary Judgment [Doc.

62] is **GRANTED in part** and **DENIED in part,** and the Motion for Partial Summary Judgment [Doc. 64] is **DENIED**.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party

discharges this burden, the burden then shifts to the nonmoving party to go beyond the

pleadings and present specific evidence showing that there is a genuine issue of

material fact.[6]  This evidence must consist of more than mere conclusory allegations or

legal conclusions.[7]

## BACKGROUND

### I.    Facts

This intellectual property dispute arises from a doctrinal split within a Christian

ministry.  The Court's task of determining the undisputed facts has been unnecessarily

complicated by Plaintiffs Light for Life, Inc. and Pastor David Byung Kook Kang's

failure to cite to evidence supporting their argument that genuine issues of material fact

remain.  Federal Rule of Civil Procedure 56 requires that, on summary judgment, "[a]

party asserting that a fact . . .  is genuinely disputed must support the assertion by . . .

citing to particular parts of materials in the record."[8]  The Court's Local Rules echo this

requirement by stating

> Response shall be made to each of the movant's numbered material facts.
> All material facts contained in the movant's statement which are not
> specifically controverted by specific citation to particular parts of materials

---

[5] *Celotex Corp.,* 477 U.S. at 323 (internal quotation marks omitted).
[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.,* 477 U.S. at 324-26.
[7] *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).
[8] Fed. R. Civ. P. 56(c)(1)(A).

in the record <u>shall be deemed to have been admitted</u>, unless otherwise inappropriate.[9]

In response to Defendants' Motions, Plaintiffs summarily deny facts without providing any cites to the record.  Nevertheless, the Court has exercised its discretion and carefully reviewed the evidence submitted by Plaintiffs to determine whether their conclusory denials are supported by the evidence.[10]  Where the evidence is absent, those facts have been deemed admitted.   The facts viewed in the light most favorable to Plaintiffs, the nonmovants, are as follows:

The road to the current litigation began in 1989, when Plaintiff Pastor Kang founded his ministry on the writings of Ellen G. White and the traditions of the Seventh Day Adventist movement.[11]  In furtherance of that ministry, on July 24, 1990, Pastor Kang incorporated Defendant Our Firm Foundation for Koreans, Inc. ("OFFK") as a Georgia not-for-profit corporation and served both as president and as a member of the board of directors.[12]  Pastor Kang's primary role was conducting the ministry of OFFK, which included educating and teaching through various media (including radio and

---

[9] M.D. Ga., L.R. 56 (emphasis added).

[10] *See Reese v. Herbert*, 527 F.3d 1253, 1270-71 (11th Cir. 2008) (explaining that the district court has broad discretion to overlook a party's noncompliance with Local Rule 56.1 and consider all the evidence of record on summary judgment).

[11] David Byung Kook Kang Aff. ¶ 3 [Doc. 71-1].

[12] Justin Kim Decl. ¶¶ 3, 11 [Doc. 63-1]; Kang Aff. ¶ 4, Ex.1 [Doc. 71-1]; Chang Sup Shim Decl. ¶ 3 [Doc. 63-4].

television), writing books, giving sermons, and raising money.[13]   To this day, OFFK continues to operate as a not-for-profit ministry that focuses on the dissemination of its message through websites, magazines, TV broadcasting, and weekly sermons to the Adventist community in the United States, South Korea, Japan, and China.[14]

In the early 1990s, Pastor Kang and OFFK expanded their ministry to non-Adventists and adopted the "Light for Life" mark to promote this new facet of their ministry.[15]   The parties agree that the mark was inspired by Ellen G. White's book *Light for Life*, but they disagree as to who adopted the mark.   Pastor Kang contends he adopted the mark to represent his entire ministry, which he contends is broader than OFFK and includes other affiliated organizations and churches, and incorporated Plaintiff Light for Life, Inc. (hereinafter "LFL, Inc.") in 1993 to further serve this broader ministry.[16]   Pastor Kang avers that he and LFL, Inc. then orally granted the other organizations, including OFFK, a license to use the "Light for Life" mark.[17]

OFFK, however, disputes Pastor Kang's depiction of the circumstances surrounding the adoption of the "Light for Life" mark.   OFFK represents that, in early 1993, it began searching for a new name for its outreach ministry because "Our Firm

---

[13] Kang Dep. 12:18-20, 20:8-23, 21:2-11, 25:7-24 [Doc. 63-6].

[14] Kim Decl. ¶ 5 [Doc. 63-1].

[15] *Id*. at ¶ 6; Andrew Kang Decl. ¶ 7 [Doc. 63-2].

[16] Kang Aff. ¶¶ 7, 13, Ex. 3 [Doc. 71-1].

[17] *Id*. at ¶ 14.

Foundation," the organization's name and title of its magazine, was not appealable to non-Adventists.[18]  Accordingly, OFFK's board of directors held a formal meeting and adopted the name "Light for Life."[19]

It is undisputed that OFFK began to use the "Light for Life" mark in its distributed materials, including its monthly outreach magazine and its television ministry in the early 1990s.[20]  OFFK first displayed the "Light for Life" mark on the cover of its magazine in September of 1994.[21]  Pastor Kang was approached about changing OFFK's name to "Light for Life" but indicated that he wanted to continue to use both names.[22]  In 2001, Plaintiffs authorized OFFK to register "Light for Life" as a trade name with the Clerk of Court in Hart County, Georgia.[23]

In addition to adopting the "Light for Life" mark, the parties created websites to promote ministry outreach, which included www.lightforlife.org, www.sostv.net, www.finalg.org, www.askbible.net, www.askssabbath.org, and www.holytube.org (collectively, the "Websites").[24]  These Websites were used to further the ministry and Pastor Kang's teachings.[25]  The Websites are registered by Min Ju Kim, a third party

---

[18] A. Kang Decl. ¶¶ 4-5 [Doc. 63-2].
[19] *Id.* at ¶ 7.
[20] Kim Decl. ¶ 7 [Doc. 63-1].
[21] A. Kang Decl. ¶ 10 [Doc. 63-2].
[22] Alice Glenn Decl. ¶ 5 [Doc. 63-3].
[23] Kang Aff. ¶ 15, Ex. 4 [Doc. 71-1].
[24] *Id.* at ¶ 31.
[25] *Id.*

who is neither an agent nor an employee of OFFK.[26]  Instead, it appears as if Min Ju Kim is a follower of Pastor Kang.[27]  The parties dispute who paid the registration fees for these Websites.[28]

Pastor Kang also wrote and delivered speeches, lectures, sermons, books, articles, and other works of authorship to promote ministry outreach.[29]  Pastor Kang registered several of these works with the United States Copyright Office, including the *Book of Daniel*, *Revelation*, *Sanctuary*, *The Blotting Out of Sin*, *The Economical Stages of the Sunday Law*, *The Last King is Rising*, and *Why Do You Serve God?* (collectively, the "Copyrighted Works").[30]  OFFK as well as other organizations affiliated with the ministry used and disseminated the Copyrighted Works pursuant to a license orally granted by Pastor Kang.[31]

Over time, significant disagreement and strife regarding the theological direction of the ministry arose between Pastor Kang and OFFK board members, Defendants Paul Im and Chang Sup Shim.[32]  Defendants Im and Shim wanted to continue to align OFFK's ministry with the Seventh Day Adventist Church.[33]  Pastor Kang, on the other

---

[26] Kim Decl. ¶ 24 [63-1].
[27] *Id.*
[28] *See* Kang Aff. ¶ 32 [Doc. 71-1]; Shim Decl. ¶ 13 [Doc. 63-4].
[29] Kang Aff. ¶ 7 [Doc. 71-1].
[30] *Id.* at ¶ 8, Ex. 2.
[31] *Id.* at ¶ 7.
[32] *Id.* at ¶ 33.
[33] *See* Kim Decl. ¶ 22 [Doc. 63-1].

hand, sought to distance the ministry from the Adventist Church.[34]   In an attempt to reduce tension, Pastor Kang resigned from the OFFK board in July 2011, and in February 2012, resigned from his employment with OFFK.[35]

After Pastor Kang resigned, the parties began to dispute the ownership of several of the ministry assets.   On February 24, 2012, Plaintiffs sent a letter to OFFK revoking OFFK's license to use the "Light for Life" mark and directing OFFK "to cease and desist carrying out any actions on behalf of [LFL, Inc.] or claiming an affiliation with or authority to act on behalf of [LFL, Inc.]."[36] Despite this letter, Plaintiffs contend that OFFK seized control of the ministry Websites, deprived Plaintiffs of access to them, and continued to use the Copyrighted Works and "Light for Life" mark on the Websites to solicit donations from potential donors.[37]   Access and control of the Websites was later returned to Min Ju Kim.[38]   Plaintiffs also contend that OFFK changed LFL, Inc.'s address to a post office box in Franklin Springs, Georgia and took three vehicles belonging to LFL, Inc.[39]

---

[34] *Id*. at ¶ 19.
[35] Kang Aff. ¶ 33 [Doc. 71-1]; Kim Decl. ¶ 23 [Doc. 63-1].
[36] Kang Aff., ¶ 35, Ex. 7 [Doc. 71-1].
[37] *Id*. at ¶¶ 36-38.
[38] *Id*. at ¶ 40.
[39] *Id*. at ¶¶ 43, 49-50.

## I.  Procedural History

On March 30, 2012, Plaintiffs LFL, Inc. and Pastor Kang filed this trademark and copyright infringement suit against Defendants OFFK, Paul Im, Chang Sup Shim, and Justin Kim.   After filing suit, Plaintiffs obtained federal trademark registrations for "Light for Life" (Reg. No. 4,233,113) and "Light for Life Ministry" (Reg. No. 4,233,109) from the United States Patent and Trademark Office ("USPTO").[40]   According to Reg. No. 4,233,113, Plaintiffs first used the "Light for Life" mark in commerce on December 31, 1999.[41]   According to Reg. No. 4,233,109, Plaintiffs first used the "Light for Life Ministry" mark in commerce on May 14, 1993.[42]

Following the Court's order on Defendants' motion to dismiss and Plaintiffs voluntary dismissal of one claim, Plaintiffs' remaining claims include:  false designation of origin under 15 U.S.C. § 1125(a) of the Lanham Act (Count II); copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.* (Count IV); trademark infringement, counterfeiting, and dilution under both federal common law and Georgia state law (Count V); unfair competition under Georgia common law (Count VI); deceptive trade practices under O.C.G.A. § 10-1-370, *et seq.* (Count VII); conversion (Count VIII); civil liability for computer trespass pursuant to O.C.G.A. § 16-9-93 (Count

---

[40] *Id.* at ¶¶ 25, 28, Exs. 5 & 6.
[41] *Id.* at Ex. 5.
[42] *Id.* at Ex. 6.

IX); and civil liability for false identification by use of computer pursuant to O.C.G.A. §

16-9-93.1 (Count X).

Defendants answered, denied liability, and asserted sixteen counterclaims of their

own against LFL, Inc., Pastor Kang, and Counterclaimant Gina Cho.  These counterclaims

include similar claims for, *inter alia*, unfair competition, trademark infringement,

deceptive trade practices, dilution, conversion, and breach of fiduciary duties.

Defendants seek declaratory and injunctive relief as well as punitive damages.

On December 19, 2014, following a prolonged stay in this case due to the waning

health of Pastor Kang, Defendants collectively moved for summary judgment on all of

Plaintiffs' claims.  On that same day, Defendants moved for partial summary judgment

on Counts I-III of their counterclaims, in which they seek (1) a declaratory judgment that

they did not infringe the "Light for Life" and "Light for Life Ministry" marks and (2)

cancellation of Plaintiffs' federal trademark registrations for these marks.  In addition,

Defendants have moved for summary judgment on Counts XII-XIII of their

counterclaims for conversion of the Websites, donor information, and ministry funds.

In response, Plaintiffs voluntarily dismissed their claims against Defendants Paul

Im, Chang Sup Shim, and Justin Kim without prejudice.  However, Plaintiffs argue that

genuine issues of material fact remain as to whether Plaintiffs or OFFK own the

trademarks, the Copyrighted Works, domain names, and other personal property at stake in this case, and, therefore, summary judgment would be inappropriate on any of these claims.

## DISCUSSION

The various claims and counterclaims in this case revolve around one primary issue: ownership of ministry assets.  The parties dispute ownership of intellectual property, including the rights to use the "Light for Life" mark and the Copyrighted Works.  In addition, the parties dispute the ownership of other ministry assets, including, but not limited to, the Websites, donor lists, and vehicles.  The Court will address the intellectual property and personal property claims in turn below.

### I.   Trademark-Related Claims

In Counts II, V, VI, and VII of the Complaint, Plaintiffs raise claims for false designation of origin under 15 U.S.C. § 1125(a) of the Lanham Act, trademark infringement, counterfeiting, and dilution under both federal common law and Georgia law, unfair competition under Georgia common law, and deceptive trade practices under O.C.G.A. § 10-1-370, *et seq.,* arising from OFFK's use of the "Light for Life" mark. In Counts I-III of its Counterclaim, OFFK seeks a declaratory judgment that it has not

11

committed trademark infringement as well as cancellation of Plaintiffs' trademark registrations for "Light for Life Ministry" and "Light for Life."  OFFK now moves for summary judgment on all of these claims and counterclaims.

The analysis of these federal and state trademark-related claims is materially the same.[43]  To prevail on these claims, a party must prove that (1) it owns a valid and protectable mark, and (2) the opposing party's use of an identical or similar mark is likely to cause confusion.[44]  OFFK argues it is entitled to summary judgment because Plaintiffs cannot establish either element for the "Light for Life" mark.  The Court, however, finds that genuine issues of material fact exist as to both elements, and, therefore, summary judgment on these claims is denied.

---

[43] *See Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) (observing that the standards governing Georgia state law claims for trademark infringement, deceptive trade practices, and unfair competition are "similar, if not identical, to those under the Lanham Act."); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 (11th Cir. 1983) (treating as correct district court's holding that Georgia deceptive trade practices and common law unfair competition claims involved the same dispositive issue as the Lanham Act claim brought pursuant to 15 U.S.C. § 1125); *Step Co. v. Consumer Direct, Inc.*, 936 F. Supp. 960, 967 (N.D. Ga. 1994) ("[T]he consideration of the common law unfair competition claim and Plaintiff's allegation that Defendant violated the Georgia Uniform Deceptive Trade Practices Act is co-extensive with the Lanham Act analysis."); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a "measuring stick" in evaluating the merits of state law claims of unfair competition.").
[44] *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797 (11th Cir. 2003) (citing 15 U.S.C. § 1125(a)).

## A. Ownership of the "Light for Life" Mark

First, OFFK argues the undisputed evidence shows it is the rightful owner of the "Light for Life" mark because it was the first to use the mark.  In support, OFFK contends it adopted the "Light for Life" mark in early 1993 and first used the mark in September of 1994 by displaying the mark on the cover of its magazine.  Plaintiffs counter that the fact OFFK was the first to use the mark in commerce is not dispositive because OFFK's use of "Light for Life" was made pursuant to an oral license granted by Plaintiffs. Thus, OFFK's first use of the mark did not vest OFFK with any ownership rights in the mark.

Under common law, mere adoption of a mark, in and of itself, is not sufficient to create a protectable trademark.[45]  Instead, trademark ownership rights are "appropriated only through actual prior use in commerce."[46]  However, a licensor under certain circumstances can acquire a protectable trademark interest through a licensee's use of the mark, even if the licensor himself did not use the mark first.[47] When a licensee uses a mark, "[the] licensee's use inures to the benefit of the licensor-

---

[45] *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1267 (5th Cir. 1975) ("Mere adoption of a mark without bona fide use, in an attempt to reserve it for the future, will not create trademark rights.").

[46] *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).

[47] *See Turner v. HMH Publ'g Co.*, 380 F.2d 224, 229 (5th Cir. 1967); *see also* 3 *McCarthy on Trademarks and Unfair Competition* § 18:46 (4th ed. 2004) ("Ownership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee.").

owner of the mark and the licensee acquires no ownership rights in the mark itself."[48] This common law rule has been codified in Section 5 of the Lanham Act.[49]  "In order for [a] licensor to acquire and maintain ownership based on the licensee's use of the mark, the licensor must exercise some control over the licensee's use of the mark."[50]

Here, a genuine issue of material fact exists as to whether Plaintiffs controlled OFFK's first use of the mark pursuant to an oral license and whether OFFK's use pursuant to that license vested Plaintiffs with a protectable trademark interest in the "Light for Life" mark.  Indeed, there is evidence in the record suggesting Pastor Kang exerted control over OFFK's use of the "Light for Life" mark.  Specifically, one witness testified that she approached Pastor Kang about possibly changing OFFK's name to Light for Life, but Pastor Kang indicated he wanted to continue to use both names.  If Pastor Kang controlled OFFK's use of the mark pursuant to a license, OFFK would not have a protectable trademark interest arising from its use of the "Light for Life" mark. Instead, ownership rights would vest with Pastor Kang as the licensor.  OFFK, however, disputes that its use of the mark was made pursuant to a license.  Therefore, whether

---

[48] 3 *McCarthy on Trademarks & Unfair Competition* § 18:45.50 (4th ed. 2004).

[49] *Id.*

[50] *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 574 (S.D.N.Y. 2013); *see also* 15 U.S.C. § 1055 ("If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant[.]").

such a license existed, and, by extension, which party owns the mark, are issues better left for the jury.

## B.  Likelihood of Confusion

OFFK also argues it is entitled to summary judgment because Plaintiffs cannot establish the second element of their trademark-related claims: that OFFK's use of the "Light for Life" mark will likely cause confusion.  To determine whether a likelihood of confusion exists, the court must consider seven factors: the "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion."[51] Whether a likelihood of confusion exists is a question of fact.[52]

OFFK contends there is no evidence that OFFK sold or distributed the Plaintiffs' products and services bearing the "Light for Life" mark after February 24, 2012, when Plaintiffs allegedly revoked the trademark license.  Plaintiffs, however, have presented letters sent from OFFK to third parties bearing the "Light for Life" mark and purporting to be from the Light for Life Ministry after February 2012.  In addition, Plaintiffs have

---

[51] *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 (11th Cir. 2010).
[52] *Jellibeans, Inc.*, 716 F.2d at 839.

presented a letter displayed on the Websites during the time when OFFK controlled access to these Websites.  This letter purports to be from the Light for Life board of directors and requests continuing financial support from the ministry's followers. Clearly, if OFFK used the mark in the same channels (websites, letters), targeted at the same audience (Adventist and non-Adventist Christians), in the same industry (Christian ministry), a jury could find a likelihood of confusion.

Because genuine issues of material fact exist as to who owns the "Light for Life" mark and whether the opposing party's use of the mark will likely cause confusion, summary judgment on Plaintiffs and OFFK's trademark-related claims and counterclaims must be denied.

## II.  Copyright Infringement Claim

In Count IV of their Complaint, Plaintiffs allege that OFFK committed copyright infringement by unlawfully displaying and distributing the Copyrighted Works after Plaintiffs revoked their license to do so.  "To establish a claim of copyright infringement, a plaintiff must prove first, that he owns a valid copyright in a work and second, that the defendant copied original elements of that work."[53]

---

[53] *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000).

OFFK argues it is entitled to summary judgment because Plaintiffs cannot establish that they own the Copyrighted Works[54] or that OFFK unlawfully copied, published, or distributed the Copyrighted Works. The Court agrees that Plaintiffs have failed to establish the second element of their copyright infringement claim.

OFFK argues that Plaintiffs cannot show OFFK committed copyright infringement because Pastor Kang orally granted OFFK a license to distribute the Copyrighted Works and never revoked that license prior to filing this suit. Plaintiffs respond by arguing that the February 2012 letter revoked OFFK's license, but, despite this revocation, OFFK continued to disseminate the Copyrighted Works.

Assuming without deciding that Plaintiffs granted OFFK a license to distribute the Copyrighted Works and the February 2012 letter effectively revoked that license, Plaintiffs have presented no admissible evidence showing that OFFK unlawfully copied

---

[54] Although Plaintiffs have proffered evidence showing that they obtained copyright registrations for the Copyrighted Works, OFFK argues that it is the rightful owner of these works pursuant to the work-for-hire doctrine. *See* 17 U.S.C. § 201(b). Under this doctrine, when an employee creates a work within the scope of his employment, the ownership rights in the work vest in the employer, not the employee. *Id.*; *see also* 17 U.S.C. § 101 (defining "work made for hire" as "a work prepared by an employee within the scope of his or her employment"). OFFK argues that because Pastor Kang created the Copyrighted Works within the scope of his employment as OFFK's president, therefore, the Copyrighted Works belong to OFFK. Because OFFK is entitled to summary judgment on the second prong of Plaintiffs' copyright infringement claim, the Court will not address OFFK's argument regarding ownership pursuant to the work-for-hire doctrine.

or distributed the Copyrighted Works after February 2012.  Pastor Kang admitted during

his deposition that he has no evidence OFFK copied or published his books, and the

record is devoid of any sales of the Copyrighted Works by OFFK.  Instead, Plaintiffs

point to screenshots from the Websites, a flyer, letters displayed on the Websites, and

letters sent to third parties, purportedly displaying and advertising the Copyrighted

Works.  This evidence, however, is insufficient to create a triable issue of copyright

infringement.

First, the website screenshots and flyer purporting to advertise the Copyrighted

Works are in Korean.  "[F]ederal court proceedings must be conducted in English."[55]

Without an English translation, the Court cannot consider this evidence on summary

judgment.[56]

Second, the letters displayed on the Websites as well as the letters sent to third

parties do not reference the Copyrighted Works.  The only letter that refers to the

Copyrighted Works constitutes inadmissible hearsay.  In that letter, dated March 11,

2012 and addressed to Pastor Kang, an individual states that she received a list of the

recorded sermons or seminars from the Franklin Springs, Georgia address.[57]  "The

---

[55] *United States v. Rivera-Rosario*, 300 F.3d 1, 5 (1st Cir. 2002).

[56] *See Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 413-14 (1st Cir. 2000) (declining to consider a deposition excerpt in Spanish on summary judgment when an English translation was not provided).

[57] Kang Aff., Ex. 10 [Doc. 71-1].

general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."[58]  Nevertheless, the Court may consider hearsay on summary judgment if the statement can be reduced to admissible form at trial.[59]  Plaintiffs, however, failed to show how this evidence can be reduced to admissible form.  Thus, the Court cannot consider it.

Without this evidence, Plaintiffs have failed to show that OFFK copied, distributed, sold, or otherwise used the Copyrighted Works after February 2012.  As such, OFFK is entitled to summary judgment on Plaintiffs' copyright infringement claim.

### III. Conversion Claims

In addition to their intellectual property claims, both Plaintiffs and OFFK assert conversion claims regarding certain personal property.  Specifically, Plaintiffs allege OFFK converted ministry assets including the Websites, vehicles, audio and video production equipment, master tapes, donations, and other personal property.  Similarly, OFFK alleges that Plaintiffs converted the Websites, donor lists, donations, equipment, and other property from OFFK premises.  OFFK seeks summary judgment on all of these

---

[58] *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotation marks omitted).
[59] *Id.* at 1323.

claims, arguing that the undisputed evidence shows it is the rightful owner of all the ministry assets.

"To establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."[60]  With the respect to the majority of the parties' conversion claims, the only element disputed by the parties is the first—namely who owns title to or has the right to possess the property.

Having reviewed the evidence, the Court finds genuine issues of material fact exist on all the conversion claims except for Plaintiffs' conversion claims for the audio and video production equipment, master tapes, donations, and two unidentified vehicles.

### A.  Websites

Both Plaintiffs and OFFK claim a property interest in the Websites and argue that the opposing party converted the Websites following Pastor Kang's resignation.  The evidence shows that OFFK seized control over the Websites in early 2012.  Access and control over these Websites was later returned to Plaintiffs.  Based on the parties' respective periods of control, both Plaintiffs and OFFK raise conversion claims for the

---

[60] *Washington v. Harrison*, 299 Ga. App. 335, 338 (2009) (internal quotation marks omitted).

other party's alleged interference with their access to the Websites.  In its Motions, OFFK now argues the undisputed evidence shows it owns the Websites, and therefore, it is entitled to summary judgment on these claims.  The Court, however, finds a genuine issue of material fact exists as to who owns the Websites.

The Websites are registered by a third party, Min Ju Kim, who OFFK admits is not an employee or agent of OFFK.  Instead, the registrant is a follower of Pastor Kang. Moreover, the parties dispute who paid the registration fees for the Websites.  OFFK claims it paid the domain name registration fees; whereas Pastor Kang claims the Websites were created and maintained by Light for Life Ministry's Korean affiliate and were funded by donations to Light for Life Ministries.[61]   Neither party, however, provides evidence of such payments.  As such, a genuine issue of material fact exists as to who owns the Websites.

### B.  Plaintiffs' Conversion Claim for Other Personal Property

Plaintiffs also claim OFFK converted other ministry assets including vehicles, audio and video production equipment, master tapes, and ministry donations.  OFFK

---

[61] OFFK contends the Court cannot consider Pastor Kang's Affidavit on this issue because it directly contradicts his previous deposition testimony.  In his affidavit, Pastor Kang avers that the registration fees were paid by donations to Light for Life Ministries. Kang. Aff. ¶ 32 [Doc. 71-1].  In his deposition, however, when asked if OFFK paid the registration fees, he responded "Maybe, yeah, I don't remember." Kang Dep. 56:21-24 [Doc. 63-6].  These statements are not entirely inconsistent given Pastor Kang's indication that he could not remember who paid the fees at the deposition.  Therefore, the Court will consider the Affidavit along with the other evidence on this issue.

now moves for summary judgment, arguing Plaintiffs have failed to present any evidence showing Plaintiffs owned the referenced personal property.

Plaintiffs do not argue or present any evidence showing OFFK converted audio and video production equipment, master tapes, or ministry donations. Because Plaintiffs fail to address OFFK's argument regarding this property, the Court finds Plaintiffs have abandoned their conversion claims as to that property.[62]

Plaintiffs do, however, present evidence regarding their conversion claim of the vehicles. Plaintiffs contend OFFK converted three vehicles owned by LFL, Inc. Pastor Kang avers that he demanded return of the three vehicles after he resigned from OFFK, but OFFK refused. OFFK later sold one of the vehicles without Plaintiffs' authorization. To support their claim of ownership, Plaintiffs offer a copy of the registration suspension notice for one of the vehicles showing it was registered in LFL, Inc.'s name.[63] OFFK does not dispute that it currently possesses the vehicles and that it sold one of them. Instead, OFFK contends it owns the vehicles because it paid for them.

---

[62] *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 972 (11th Cir. 2008) ("[The plaintiff] did not defend the claim on summary judgment; he thus abandoned it."); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned where plaintiff did not address claim on summary judgment). Moreover, even if Plaintiffs had not abandoned their conversion claim as to that property, they have produced no evidence of conversion by OFFK.

[63] OFFK objects to the admissibility of the vehicle registration suspension as hearsay. However, because the registration suspension may be reducible to admissible form at trial as falling under the public records exception, Fed. R. Evid. 803(8)(A)-(B) or otherwise authenticated, the Court may consider it on summary judgment.

Having considered the evidence, the Court finds a genuine issue of material fact exists as to who owns the one vehicle for which Plaintiff has proffered a vehicle registration suspension showing title in LFL, Inc.'s name.  Plaintiffs' evidence, however, falls short of demonstrating ownership of the other two unidentified vehicles.

Accordingly, OFFK's is entitled to summary judgment on Plaintiffs' conversion claims for the audio and video production equipment, master tapes, ministry donations, and two unidentified vehicles; summary judgment, however, must be denied with respect to the one vehicle identified in the registration suspension notice.

### C.  OFFK's Conversion Claim for Other Personal Property

OFFK also asserts a counterclaim for conversion of donor lists, donations, equipment, and other property.  OFFK contends, after he resigned, Pastor Kang took donor lists used in OFFK's ministry that belonged to OFFK.  In addition, OFFK contends that Pastor Kang's son-in-law and his followers removed property including computer and video equipment from OFFK's office during the two-week transition period following Pastor Kang's resignation.

As to OFFK's claim for conversion of donor lists, a genuine issue of material fact remains as to who owns those lists.  Pastor Kang admits to using these lists, but argues that OFFK did not own them.  Instead, Pastor Kang states that all the organizations

affiliated with the Light for Life Ministry routinely shared the lists.  Thus, the ownership of these lists is an issue for the jury.

As to OFFK's claim regarding the office equipment, a genuine issue of material fact exists as to whether Plaintiffs converted the personal property allegedly taken from OFFK's office.  Plaintiffs do not contest that OFFK owns the office equipment Pastor Kang's son-in-law and other followers are accused of removing from OFFK's office. Rather, Pastor Kang avers he does not possess the disputed property.  OFFK, however, claims Plaintiffs have the property.  Thus, there appears to be a genuine issue of material fact as to the second element of conversion.

Moreover, assuming Pastor Kang's son-in-law and other followers took the property, an issue remains as to whether they were acting on behalf of or at the direction of Pastor Kang.  Under Georgia law, an agent and the principal on whose behalf the agent acts can be liable for conversion.[64]  However, where a person acts without direction from a third party, no agency relationship exists to impute liability to the third party.[65] Here, it is unclear whether Pastor Kang's son-in-law and followers were acting on behalf of Pastor Kang such that the Court could find Pastor Kang liable for conversion under

---

[64] *See Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1987) ("Whoever meddles with another's property, whether as principal or agent, does so at his peril[.]").

[65] *See Page v. Braddy*, 255 Ga. App. 124, 126 (2002) (finding that neighbor who sold timber could not be held liable for conversion of trees cut by grantee beyond fence line because grantee was not acting as neighbor's agent when grantee cut more trees than directed to by neighbor).

agency theory.  Thus, a genuine issue of material fact exists as to whether Plaintiffs converted OFFK's property.

### IV. Georgia Computer Systems Protection Act Claims

In addition to their intellectual property and personal property claims, Plaintiffs seek redress under the Georgia Computer Systems Protection Act ("CSPA") for OFFK's alleged interference with the Websites.  The Georgia Assembly enacted the CSPA to address problems with "computer related crimes" and to aid the "prosecution of persons engaged in computer related crime."[66]  To further that purpose, the CSPA defines various computer related crimes and creates civil liability for these offenses under certain circumstances.[67]  Plaintiffs' Complaint alleges two of these offenses: (1) computer trespass (Count IX) and (2) false identification by use of a computer (Count X).

A party commits computer trespass when it

uses a computer or computer network with knowledge that such use is without authority and with the intention of:

(1)     Deleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network;

(2)     Obstructing, interrupting, or in any way interfering with the use of a computer program or data; or

---

[66] O.C.G.A. § 16-9-91.

[67] *See* O.C.G.A. § 16-9-93.

> (3)  Altering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program, regardless of how long the alteration, damage, or malfunction persists[.][68]

OFFK argues it is entitled to summary judgment on Plaintiffs' computer trespass claim for two reasons. First, Plaintiffs fail to show that OFFK's access to the Websites was "without authority" because the undisputed evidence shows that OFFK was the rightful owner of the Websites.  However, for the reasons provided above, a genuine issue of material fact remains as to who rightfully owns the Websites, and thus, OFFK is not entitled to summary judgment on this ground.

Second, OFFK argues that Plaintiffs have produced no evidence showing that OFFK intentionally deleted or removed any computer program or data from the Websites.  The CSPA, however, states that a party may commit computer trespass by "obstructing, interrupting, or in any way interfering with the use of a computer program or data."[69]   In his affidavit, Pastor Kang avers that OFFK seized access to and control over the Websites and deprived Plaintiffs of access to those Websites—facts clearly implicating the statutory elements of computer trespass.  Thus, OFFK is not entitled to summary judgment on this claim.

In Count X, Plaintiffs assert a claim under section 16-9-93.1 of the CSPA, which prohibits a party from knowingly transmitting data through a computer network if that

---

[68] O.C.G.A. § 16-9-93(b).
[69] O.C.G.A. § 16-9-93(b)(2).

data contains a trade name or registered trademark "to falsely identify the [party] transmitting such data" or "falsely state or imply that such [party] has permission or is legally authorized to use" the trade name or registered trademark.[70]   By usurping control over the Websites, Plaintiffs contend OFFK transmitted data containing the "Light for Life" mark, falsely portraying themselves as authorized to use that mark. OFFK's sole argument for summary judgment on this claim is that it owns the "Light for Life" mark.   Because a genuine issue of material fact exists as to who owns the "Light for Life" mark, OFFK is not entitled to summary judgment on Count X.

## CONCLUSION

Based on the foregoing, OFFK's Motion for Summary Judgment [Doc. 62] is **GRANTED in part** and **DENIED in part**.   Counts II, V-VII, VIII (regarding conversion of the vehicle and Websites), and IX-X of the Complaint may proceed.   However, OFFK is entitled to summary judgment on Counts IV and Count VIII (regarding conversion of the remaining property identified above) of the Complaint.   OFFK's Motion for Partial Summary Judgment [Doc. 64] on Counts I-III and Counts XII-XIII of its Counterclaims is **DENIED**.

---

[70] O.C.G.A. § 16-9-93.1(a).

**SO ORDERED,** this 12th day of February, 2015.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

ADP/ssh/jrf

28